UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON G. DIENES,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 16-cv-1812-AJB-BGS<br><br>**ORDER GRANTING DEFENDANT'S PARTIAL SUMMARY JUDGMENT MOTION (Doc. No. 20)** |

Before the Court is FCA's motion for partial summary judgment. (Doc. No. 20.) Because the Court finds Dienes failed to produce evidence of concealment, among other things, the Court **GRANTS** FCA's partial summary judgment motion.

## I. BACKGROUND

This dispute arises from FCA's alleged breach of warranty obligations owed to Dienes for a new 2012 Jeep Grand Cherokee he purchased from FCA on November 25, 2011. Dienes asserts FCA concealed a known defect from him, specifically, a defect with the totally integrated power module ("TIPM"), which is responsible for controlling and distributing electrical power to the entire vehicle. (Doc. No. 1-2 ¶ 3.) Dienes requested Chrysler repurchase his vehicle on November 13, 2015, which was denied. (Doc. No. 22-5 at 2.) After Dienes opted out of a class action lawsuit, FCA offered to repurchase Dienes' vehicle. Dienes rejected this offer, and brought the instant lawsuit.

Dienes brought causes of action for breaches of express and implied warranties in violation of California's Song-Beverly Consumer Warranty Act ("SBA") as well as fraudulent inducement/concealment under California state law. (Doc. No. 1 ¶ 1; Doc. No. 1-2.)

## II. LEGAL STANDARDS

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23. If the moving party carries its initial burden, the burden of production shifts to the nonmoving party to set forth facts showing a genuine issue of a disputed fact remains. *Id.* at 330. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

FCA moves for partial summary judgment on Dienes' (1) fraudulent inducement cause of action, (2) claims for a civil penalty, and (3) claims for punitive damages. (Doc. Nos. 20 at 2; 20-1 at 6.)

### 1. <u>Fraudulent Inducement-Concealment Cause of Action</u>

FCA challenges Dienes' fraudulent inducement cause of action arguing Dienes provided no facts supporting a fraudulent inducement claim. (Doc. No. 20-1 at 11–13.) To

2

16-cv-1812-AJB-BGS

prevail on a fraudulent inducement cause of action, a plaintiff must prove: (1) concealment of a material fact, (2) which defendant had a duty to disclose, (3) the defendant intentionally concealed the fact with the intent to defraud, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed fact, and (5) as a result, sustained damage. *Moncada v. West Coast Quartz Corp.*, 221 Cal. App. 4th 468, 775 (2013) (internal citation omitted). Dienes argues there are triable issues of material fact for each element. (Doc. No. 45 at 8.)

### *i. Intentional Concealment*

Dienes alleges FCA "knew about defects with the TIPM starting in October 2005." (Doc. No. 45 at 8.) Dienes cites to exhibits 5–28 and 32–88 of his declaration, which consists of well over 500 pages. "The district judge is not required to comb the record to find some reason to deny a motion for summary judgment." *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988); *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1030 (9th Cir. 2001) ("It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence."); *see also Christian Legal Society Chapter of Univ. of Calif. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.") (internal quotation omitted). Nevertheless, the Court will do its best analyzing the evidence submitted.

Exhibits 5 through 9 show TIPM defects in other vehicles and a recall in the Cherokee for an "incorrect evaporative system." (Doc. Nos. 46-5–46-9; 46-7 at 5.) Exhibit 10 shows a notice, dated December 2014, of a TIPM recall in the Cherokee. (Doc. No. 46-10 at 2.) The specific TIPM defect dealt with the internal fuel pump relay. (*Id.*) There was another recall notice for the fuel pump relay in July 2015 labeled the "R09 Recall." (Doc. No. 46-11 at 2.) Dienes was notified of this defect and subsequently had it repaired on August 21, 2015. (Doc. No. 20-1 at 7.) Both of these notices came after Dienes had purchased the vehicle; he was notified of the problem; and it was repaired. The evidence of TIPM defects pre-2012—such as in the Jeep Wrangler and the Dodge Nitro—are

3

irrelevant as they do not show there was intentional concealment of any issue in the Cherokee prior to Dienes' purchase.

Dienes claims his expert, Dr. Barbara Luna, will testify that the information could not have been discovered prior to purchase. In her declaration, she states "FCA appears to have had knowledge of TIPM-7 defects since at least 2007 . . . ." (Doc. No. 47 at 6.) She notices there have been numerous consumer complaints submitted, multiple recalls, National Highway Traffic Safety Administration ("NHTSA") investigations, and emails between personnel. (*Id.*) The NHTSA's website allows consumers to look up the history of recalls, investigations, complaints, and manufacturer communications by car type.[1] Looking through that website, the Court notes the only recall pre-purchase was in 2011 for a rod bearing failure.[2] All other recalls began in 2014.[3] The NHTSA's investigation into the TIPM failure began on September 25, 2014, well after Dienes purchased the Cherokee.

Dr. Luna also states there are "[m]any email strings between FCA personnel and other presentations and documents over a four-and-a-half-year period regarding TIPM-7 defects." (*Id.* at 9.) However, the evidence attached shows TIPM defects in other vehicles pre-2012, but mentions nothing of a TIPM defect in the 2012 Cherokee. In an exhibit to her declaration, she includes a chart titled "Observations Regarding Appearance of TIPM Defects Having a Long History – Without Effective Replacement." (Doc. No. 47-2 at 2.) The chart documents a history of TIPM defects and recalls dating back to 2007, but fails to tie any of those issues to the Jeep Cherokee. Luna also includes a summary chart of the emails produced in Dienes' exhibits. (Doc. No. 47-3 at 2–6.) While useful, again, it only shows there were TIPM-7 issues generally. Dienes did not prove that FCA knew of a TIPM defect in his Cherokee's model number prior to his purchase. He needed to prove that the use of the TIPM in the 2012 Cherokee specifically was known by FCA to be defective

---

[1] National Highway Traffic Safety Administration, found at https://www.nhtsa.gov/recalls.
[2] Rod Bearing Failure, NHTSA Campaign Number: 11V487000, Sept. 29, 2011.
[3] *Id.*

4

before the sale—and in 1,009 pages he neglected to do so. The Court finds such an inference would be unreasonable.

On this record, the Court cannot infer that the TIPM defects found in FCA's other models were also present in the Cherokee model Dienes purchased. Thus, Dienes has failed to show FCA intentionally concealed a TIPM defect in his vehicle prior to purchase. As such, the Court declines to discuss both Dienes' and FCA's other arguments. The Court **GRANTS** summary judgment on this issue.

### 2. Civil Penalties

Under the Song-Beverly Act, "[a]ny buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter . . . may bring an action for the recovery of damages and other legal and equitable relief," including civil penalties. Cal. Civ. Code § 1794. The SBA provides two ways of recovering civil penalties. Section 1794(e) grants a penalty when the manufacturer violates its express warranty obligations, and section 1794(c) allows for penalties when the manufacturer's non-compliance with the SBA is willful. Cal. Civ. Code § 1794(e), (c). If a plaintiff recovers a penalty under section (c), he cannot recovery the penalty under section (e). *Id.* at (e)(5).

Dienes failed to specify in his complaint which penalty he was seeking. (*See* Doc. No. 1-2 ¶ 143.) This led to some confusion during briefing, requiring supplemental briefing. For clarity, the Court will discuss both.

### a. Civil Penalty under § 1794(e)

Regarding the § 1794(e) civil penalties, the Court finds FCA substantially complied with Cal. Civ. Code § 1793.22, thus Dienes cannot recover a civil penalty under Cal. Civ. Code § 1794(e). Accordingly, the Court **GRANTS** summary judgment on this penalty.

Section 1794(e)(1) states if a buyer can establish the manufacturer violated the SBA's repair or reimburse provision, (Cal. Civ. Code § 1793.2(d)(2)), "the buyer shall recover damages and reasonable attorney's fees and costs, and may recover a civil penalty of up to two times the amount of damages." But, "[i]f the manufacturer maintains a qualified third-party dispute resolution process which substantially complies with Section

5

1793.22" then the penalty is waived. Cal. Civ. Code § 1794(e)(2). To maintain a qualified third-party dispute resolution process, there are nine requirements that must be met. Cal. Civ. Code § 1793.22(d). Because the seventh factor is the only one Dienes argues FCA cannot meet, the Court will discuss that factor only, and give supporting references to the others, which are easily met through FCA's Operating Guide.

> *§ 1793.22(d)(1)*: This section requires compliance with dispute settlement procedures found in Part 706 Title 16 of the Code of Federal Regulations. Each of those parts are met by the following citations:
>
> - Part 703.3: (Doc. No. 28-2 at 9 (§ 3398.1)).
> - Part 703.4: (*Id.* at 10 (§ 3398.2)).
> - Part 703.5: (*Id.* at 11–20 (§§ 3398.3; 3398.5; 3398.6; 3398.8; 3398.9; 3398.10; 3398.12)).
> - Part 703.6: (*Id.* at 20 (§ 3398.13)).
> - Part 703.7: (Doc. No. 28-1 at 4 ¶ 12 ("The NCDS commissions independent annual audits of the CDSP to ensure the program is in compliance with Title 16 of the Code of Federal Regulation.").)
> - Part 703.8: (Doc. No. 28-2 at 20 (§ 3398.7; 3398.14)).
>
> *§ 1793.22(d)(2)*: Met by FCA's Written Operating Procedures § 3397.5(a). (Doc. Nos. 28 at 9; 28-2 at 9.)
> *§ 1793.22(d)(3)*: Met by FCA's Written Operating Procedures § 3397.5(b). (Doc. No. 28-2 at 9.)
> *§ 1793.22(d)(4)*: Met by FCA's Written Operating Procedures § 3398.2(h). (*Id.* at 11.)
> *§ 1793.22(d)(5)*: Met by FCA's Written Operating Procedures § 3397.5(c). (*Id.* at 9.)
> *§ 1793.22(d)(6)*: Met by FCA's Written Operating Procedures § 3398.5(f)–(f)(1). (*Id.* at 13.)
> *§ 1793.22(d)(8)*: Met by FCA's Written Operating Procedures § 3398.1(e) and § 3398.2. (*Id.* at 9–10.)
> *§ 1793.22(d)(9)*: Met by FCA's submission of a letter from the Arbitration Certification Program approving FCA for "the California Department of Consumer Affairs Arbitration Certification Program." (*Id.* at 2.) This letter states "the California Department of Consumer Affairs Arbitration Certification Program (ACP) has approved the joint undertaking of FCA US LLC., and the National Center for Dispute Settlement to operate the state certified California Dispute Settlement Program (CDSP) in California effective today." (*Id.*)

*§ 1793.22(d)(7)*: The third-party process must:

> [t]ake[] into account, in rendering decisions, all legal and equitable factors, including, but not limited to, the written warranty, the rights and remedies conferred in regulations of the Federal Trade Commission contained in Part 703 of Title 16 of the Code of Federal Regulations . . . this chapter, and any other equitable considerations appropriate in the circumstances. . . .

The Written Operating Procedures § 3398.10(b) states that "[t]he decision shall take into account all legal and equitable factors, including but not limited to the written warranty, the applicable law, and any other equitable considerations appropriate in the circumstances." (Doc. No. 28-2 at 18.)

In their supplemental brief, Dienes argues that FCA's program fails the seventh requirement because CDSP imposed a six-month deadline to bring a claim—as stated in a brochure—when the SBA imposes no such time limit. (Doc. No. 27 at 4.) The brochure states that the request must be filed within six months of the warranty's expiration, but it does not explain what happens to the claim if it is brought after that time. Dienes fails to cite to any case law, statutes, or even a declaration to support his argument that "a significant number of claims are denied" based on this reason. Moreover, to support the argument that the CDSP "will deny a claim for relief" if brought after the six-month period, Dienes points to his supporting declaration, paragraph 7, which only describes the attached brochure as an exhibit and points to the offending six-month language. The language found in this evidence does not support Dienes' conclusion that the CDSP will deny a claim or denies a significant number of claims.

However, even if FCA does not comply with § 1793.22(d)(7), the Court nevertheless finds that under Cal. Civ. Code § 1794(e)(2), FCA "substantially complie[d]" with § 1793.22 in maintaining a qualified third-party dispute resolution process. The Court finds Dienes did not raise a triable issue of material fact regarding the § 1794(e) penalty. Thus, the Court **GRANTS** summary judgment on this penalty.

### b. Civil Penalties under California Civil Code § 1794(c)

FCA argues summary judgment is appropriate on this penalty because they indeed

7

offered to repurchase Dienes' vehicle prior to him filing this lawsuit, and thus did not willfully flout their SBA obligations. (Doc. No. 20-1 at 8.) Dienes counters his first demand that FCA repurchase his vehicle—a call made to a 1-800 call center number prior to FCA's offer to buy—was denied, and thus was a willful breach. (Doc. Nos. 22 at 11; 22-5 ¶ 3.) In response, FCA stated that the call center agent advised Dienes that the "applicable warranties related to the complaints he had described were expired" and declined his initial request, but that his case was "subsequently reviewed" and an offer was made. (Doc. No. 20-1 at 17.)

If a buyer "establishes that the failure to comply [with the SBA] was willful, the judgment may include . . . a civil penalty which shall not exceed two times the amount of actual damages." *Id.* at (c). "Willful" in this sense is met when a manufacturer knows "of its obligations but intentionally decline[s] to fulfill them." *Hatami v. Kia Motors America, Inc., et al.*, No. SA CV 08-0226 DOC(MLGx), 2009 WL 1396358, at *5 (C.D. Cal. Apr. 20, 2009) (citations omitted). However, "a violation is not willful if the manufacturer's failure to replace or refund was the result of a good faith and reasonable belief that the facts imposing the statutory obligation were not present." *Id.* "This might be the case, for example, if the manufacturer reasonably believed the product did conform to the warranty, or a reasonable number of repair attempts had not been made, or the buyer desired further repair rather than replacement or refund." *Kwan v. Mercedes-Benz of North America, Inc.*, 23 Cal. App. 4th 174, 184 (Mar. 11, 1994). However, "a manufacturer who refused a refund . . . without making any effort to gather the available information on repair history, might well be deemed to have acted willfully. A decision made without the use of reasonably available information germane to that decision is not a reasonable, good faith decision." *Id.*

Dienes argues FCA's conduct was willful for three reasons: (1) the FCA agent's acts were intentional; (2) FCA knew of prior repairs and that the vehicle was eligible for buyback; and (3) FCA offered to repurchase the vehicle only after Dienes opted out of a class action lawsuit. (Doc. No. 45 at 6–7.)

As to the first reason, Dienes fails to cite to any meaningful evidence, besides his

own assertions, that FCA acted intentionally. Dienes claims:

> FCA's agent did not accidentally misstate the law to Plaintiff, accidentally fail to check the repair history, or accidentally fail to speak to Plaintiff about the impairment to the use, safety or value to the vehicle. This was all intentional conduct, and there was no review of the agent's actions until potentially when FCA received notice that Plaintiff opted out of a class action lawsuit.

(*Id.* at 6.) Dienes does not cite to any deposition, document, or even a declaration to support this assertion. At the pleading stage the Court is required to take such statements as true; however, the same statement at the summary judgment stage—without supporting evidence—fails. Dienes is required to show what evidence he would offer at trial to prove each element required, and identify the question of act for the jury, but here he merely a states an argument—a conclusion. Because he fails to cite to any proof of willfulness, the Court rejects this reason.

Turning to the second reason, Dienes argues FCA's conduct was willful because the agent failed to conduct a review of Dienes' warranty repair history and instead denied his claim for a refund without "available and relevant information." (Doc. No. 45 at 6.) Dienes states, pointing to exhibit 1, that "[t]he records are clear that no review of Plaintiff's warranty repair history was done, even though this history is available for review." (*Id.*) Exhibit 1 shows the "Customer Assistance Inquiry Record" noting information from Dienes' call with the FCA agent. (Doc. No. 46-1.) However, the agent notes purport to show a repair history search was attempted:

> Agent contact RANCHO (26743) and spoke with SW Lakendrick. Lakendrick was unable to provide any information as to the current visit/diagnosis. Lakendrick stated he would put in a request for the SA to contact CAC to inform us as to what is happening with the vehicle currently. Lakendrick advised that, previously, the last visit was:
> - 08/24/2015 for recalls [when the TIPM was repaired]
> - 11/28/14 powertrain control module replaced
> - 10/23/14 brake system inspected

(*Id.* at 2–3.) The agent went on to advise Dienes that his vehicle did not meet the requirements for review for buyback or replacement because his car was outside the

9

expiration of his California warranty. (*Id.* at 3.) Thus, it appears, Dienes' argument that "FCA's agent did not evaluate Plaintiff's request by reviewing warranty records . . . ." is wrong. (Doc. No. 45 at 7.) And, moreover, the agent denied Dienes' request in good faith because he believed the car was out of warranty—conduct explicitly found not to be willful. *Kwan*, 23 Cal. App. 4th at 184 ("This might be the case, for example, if the manufacturer reasonably believed the product did conform to the warranty . . . ."). Because the agent did research the vehicle's repair history with the dealership and denied the claim out of a good faith belief that the warranty was expired, the Court finds the agent did not willfully skirt its responsibilities under the SBA.

The final reason fails as a matter of law. Dienes argues FCA's offer to repurchase his vehicle after he opted out of the class action lawsuit was a "clear litigation tactic" and was sent to hundreds of people who had opted out. (Doc. Nos. 45 at 6; 46 ¶ 89.) Dienes baselessly claims "FCA knew that it had willfully violated the Act and it was liable for civil penalties and knew it was likely Plaintiff would bring his own lawsuit because he had opted out of the class action . . . ." (Doc. No. 45 at 7.) However, this statement is again unsupported by evidence. Dienes cites no supporting law that FCA's offer to repurchase Dienes' vehicle after he opted out of the class action suit, but before there was any kind of litigation, meets SBA's high threshold to prove willfulness—that FCA knew of its obligations, but intentionally chose to ignore them. Because Dienes did not meet his burden to show FCA acted willfully, the Court **GRANTS** summary judgment on this issue.

### 3. Punitive Damages

FCA moves for summary judgment on punitive damages pled under both California Civil Code § 1780 and § 3294.

#### a. California Civil Code § 1780

The Court **GRANTS** defendant's request for summary judgment on Dienes' claim for punitive damages under Cal. Civ. Code § 1780. In a Court-ordered supplemental brief, Dienes stated he "is not seeking relief pursuant to the Consumer Legal Remedies Act, and

10

16-cv-1812-AJB-BGS

the inclusion of a reference to damages pursuant to Cal. Civil Code section 1780 was inadvertent." (Doc. No. 27 at 2.)

### b. California Civil Code § 3294

Dienes' claim for punitive damages can only arise under his fraudulent inducement cause of action claim. "[T]he penalty under section 1794(c), like other civil penalties, is imposed as punishment or deterrence of the defendant, rather than to compensate the plaintiff. In this, it is akin to punitive damages." *Id.* Under California jurisprudence, it is improper to impose both punitive damages under Cal. Civ. Code § 3294 and civil penalties under § 1794. *Troensegaard v. Silvercrest Industries, Inc.*, 175 Cal. App. 3d 218, 226–28 (1985). "Punitive damages are therefore also not recoverable under the Song–Beverly Act." *Gibson v. Chrysler Corp.*, No. C–98–1462 MHP, 1998 WL 646659, at *3 (N.D. Cal. July 20, 1998). As the Court granted summary judgment on Dienes' fraudulent inducement cause of action, the only remaining claims are for the breach of express and implied warranties under the SBA. Thus, the Court also **GRANTS** summary judgment on Dienes' claim for punitive damages.

### IV. CONCLUSION

Dienes, admittedly, has a heavy burden at the summary judgment phase. The Court gave him two chances to produce evidence of fraudulent inducement and willfulness. For the reasons discussed herein, the Court **GRANTS** FCA's partial summary judgment motion. (Doc. No. 20.)

To summarize, the Court **DISMISSES**:

1. Dienes' claims for punitive damages under Cal. Civ. Code § 1780, § 3294;
2. Dienes' claims for a civil penalty under Cal. Civ. Code § 1794(c), § 1794(e); and
3. Dienes' claim for fraudulent inducement.

Dienes' surviving claims include Breach of Express and Implied Warranties under the Song-Beverly Act. The Court sets a pre-trial conference date for **July 9, 2018**, at **3:00 p.m. Counsel must comply with CivLR 16.1.f.4. and .6.**

11

**Counsel are further ordered to comply with Fed. R. Civ. P. 26(a)(3)(A) and (B) such that Pretrial Disclosures must be made by June 4, 2018 and objections to Pretrial Disclosures are due June 18, 2018.**

IT IS SO ORDERED.

Dated: March 9, 2018

Hon. Anthony J. Battaglia
United States District Judge